UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY STEVENS,

        Plaintiff,

v.

TOWNSHIP OF THETFORD, EILEEN KERR,
JOHN CONGDON, CLYDE HOWD, JULIE
PAULSON, SHELLY AYOTTE, and JAKE
BARTON,

        Defendants.

_____/

Case No. 09-10705

HON. MARIANNE O. BATTANI

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 20). In his complaint, Plaintiff Gary Stevens alleges that Defendants (Thetford Township and members of the Township's Board of Trustees) retaliated against him for exercising his First Amendment rights by refusing to accept his bid for parcel 17-16-400-013 of property in Thetford Township ("the Property"). Because Stevens has not presented evidence indicating that his bid was not accepted out of a motivation to retaliate against him for exercising his constitutional rights, the Court grants Defendants' Motion for Summary Judgment.

## II. STATEMENT OF FACTS

Prior to September 2006, James and Kate Gerzetich purchased a parcel of property that adjoins the Property and opened a hair salon called Kate's Kreation. In September 2006, the Gerzetiches asked the Township if they could purchase the Property. The Township Board of Trustees ("Board") decided not to sell the Property, but instead to it to the Gerzetiches for $1/year for 99 years.

Around September 2008, the Gerzetiches again sought to purchase the Property from the Township. On September 22, 2008, the Board decided to accept bids for the Property. It was noted at this meeting that the Township Assessor valued the Property at $900. On October 27, 2008, the Board met and opened the two sealed bids it had received for the Property. The Gerzetiches submitted a bid of $900. Stevens submitted a bid of $2,008.57.

Stevens regularly attends Board meetings and frequently voices criticism of the Board. In addition, he unsuccessfully ran against the incumbent Township Clerk, Julie Paulson, in a recent primary election. Stevens alleges that he was part of a group opposing Paulson, Congdon, and Kerr. Stevens claimed that Paulson verbally attacked him at a subsequent Board meeting. Therefore, he released a flyer indicating that he was running for clerk in 2012.

Immediately after the bids were opened, a Board member asked Stevens whether he had any property adjoining the property — which he did not. He was then asked if he had access to the property — which he claimed to have from Vienna Road.

According to a land survey of the Property, (see doc. 20, exh. 1), the Property has no direct road access. On one side of the Property, however, is a state-owned

"clearview" parcel at the corner of Vienna road and Center road. The state purchased this parcel so that motorists could see oncoming traffic at the intersection of Vienna and Center roads.

Board member Kerr then moved to accept the Gerzetiches' $900 bid. She testified that she made this motion because the Board cannot discuss a matter until it is brought to the table through a motion. The Board members then discussed whether the Property could be accessed from Vienna road. At least two of the Board members expressed their desire to know whether the Property could be accessed from Vienna road before voting to sell the Property to anyone. Board Member John Congdon expressed his belief that selling the Property to someone who did not have legal access to it would not be in the Township's best interests. Kerr withdrew the motion to sell the Property so that it could be investigated before the next Board meeting whether the Property could be accessed from Vienna road.

Stevens testified that he was told by then-Board member Cindy Hicks that immediately after this meeting and behind closed doors, Kerr told Board member Shelly Ayotte that, "there was no way that Gary Stevens would ever get the subject property."

Following this Board meeting, the Township Assessor sent Steve Gasser, a representative of the Michigan Department of Transportation ("MDOT"), an email stating:

> The Board of Trustees has asked me to inquire as to whether a parcel which is owned by the township, located at the corner of Vienna and Center Roads has access through the clear-view area.
>
> If you could give me whatever information you have with regards to this issue I would greatly appreciate it. . . .

Gasser responded as follows:

> MDOT owns a clear vision corner at all 4 quadrants of M-57 and Center Road. MDOT does not allow access through these corners since they were purchased for the purpose of sight vision for safety. . . .

During his deposition, Gasser stated that he was contemplating vehicular access when he made this response and that, to his knowledge, pedestrians are permitted to walk across the clearview parcel. Apparently, a representative of the Board also telephoned Gasser, and he stated that a driveway could not be put in through the clear view.

An election occurred before the next Board meeting, with a new Supervisor and two new Trustees being elected. At the November 24, 2008, Board meeting, the Board again considered the two bids for the Property. Supervisor Howd noted the email from MDOT and moved to sell the Property to the Gerzetiches. Board Member Piechnik questioned whether or not the other adjoining property owner had been notified of the sale. The Township attorney indicated that the Property had properly been placed out for public bid. The motion to sell the Property to the Gerzetiches then passed 6 to 1, with Piechnik voting against the motion. The six Trustees who voted to pass the motion all submitted affidavits indicating that they wanted to sell the Property to the Gerzetiches because, unlike Stevens, the Gerzetiches had legal access to the Property.

The Gerzetiches had previously placed a sign in support of Trustee Howd and a sign advertising a greenhouse on the Property. In his deposition, Stevens asserts that he intended to use the Property to place advertisements and signs of a political nature. Board member Ayotte testified in her deposition that she was aware that Stevens "wanted to put a sign" on the Property, but she did not learn this until after the Property was sold to the Gerzetiches.

Stevens submitted a newspaper article in which Kerr is quoted:

> The reason I preferred (Gerzetich's) bid was because I didn't understand why anyone would want a small piece of landlocked property . . . . In the end, I thought it would create more conflict. I had people contact me telling me that he was going to torture the Gerzetich's every time they wanted to use their front door. I didn't see the purpose and still don't.

In a response to a request to admit, Kerr indicated that she remembered speaking to this reporter, but she did not specifically remember what she said.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).

### IV. ANALYSIS

There are three elements to a First Amendment retaliation claim:

(1) the plaintiff was engaged in a constitutionally protected activity;

> (2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and
>
> (3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

Jenkins v. Rock Hill Local Sch. Dist., 513 F.3d 580, 585-86 (6th Cir. 2008). If the plaintiff meets this burden, the defendant requesting summary judgment must show that it would have taken the same action in the absence of the protected activity. Id.

Defendants do not contest that Stevens satisfied the first element of his retaliation claim by engaging in constitutionally protected activity. The second element Stevens must show is that Defendants' "adverse action caused [him] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity." Jenkins, 513 F.3d at 585-86. The Court finds that a reasonable jury could conclude that the individual Defendants' actions of voting against accepting Stevens' bid, even though it was more than twice of the other bid, would chill a person of ordinary firmness from continuing to exercise his rights to free speech. Likewise, the Township's act of actually accepting the lower bid also appears to be a sufficiently adverse action. Accordingly, there are genuine issues of material fact as to the second element of Stevens' retaliation claim.

The third element requires Stevens to show that "the adverse action was motivated at least in part as a response to the exercise of [his] constitutional rights." Jenkins, 513 F.3d at 585-86. Stevens asserts that Kerr's statement that there was no way he would get the property shows a retaliatory motive. This argument fails, however, because Kerr's statement does not indicate why, according to her, Stevens

will not get the Property.  Defendants claim that this statement merely meant that Stevens would not get the Property because he did not have access to the Property; and Stevens has no evidence showing otherwise.  Accordingly, this statement by Kerr does not show a retaliatory motive.  Likewise, the statements Kerr made in the newspaper article Stevens submitted — even assuming that this evidence is admissible — do not indicate that she had an illegal retaliatory motive.  For the same reasons, the fact that the Board voted to accept the lower bid instead of Stevens' bid also does not, in and of itself, show a retaliatory motive.

Stevens asserts that the Board's failure to inquire into his ability to access the Property by walking across the clearview parcel shows that their claim that they rejected his bid because he lacked access was pretextual.  Stevens, however, never raised the fact that he could access the Property by foot in the Board meetings; he merely stated that he could access the Property from Vienna Road without specifying how he would access the Property.  Furthermore, the MDOT's response to the Board did not differentiate between access by foot or vehicle when it indicated that the clearview parcel could not be used to access the Property.  The MDOT was not specifically asked about a particular type of access, and it did not specify any particular type of access when it said the Property could not be accessed through the clearview parcel.  As such, there was no discussion during the Board meetings of whether the Property could be accessed by foot because no one, including Stevens, ever raised the issue.  Thus, the failure to consider access by foot does not show that the Board's "lack of access" explanation was a pretext for illegal discrimination.

Finally, Stevens argues that Kerr's act of initiating a motion to sell the Property to the Gerzetiches shortly after the bids were received shows a retaliatory motive. Although the motion to sell the Property to the Gerzetiches certainly was adverse to Stevens, there is no evidence that Kerr made this motion with the motive of retaliating against Stevens for exercising his First Amendment rights; and Kerr's motion itself does not indicate a retaliatory motive. Thus, as Stevens has not presented any evidence indicating that Defendants acted out of a motivation to retaliate against him for exercising his First Amendment rights, Defendants are entitled to summary judgment.

**V. CONCLUSION**

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATED: May 14, 2010

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and electronic filing.

        s/Bernadette M. Thebolt
        Case Manager